**Imad Selim NASSER, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent,**

No. 83–3638.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 7, 1984.

Decided Oct. 2, 1984.

Joseph A. Gatto, Charles S. Owen (argued), Detroit, Mich., for petitioner.

Immigration & Naturalization Service, Cincinnati, Ohio, Robert Kendal, Jr. (argued), Thomas W. Hussey, Office of Immigration Litigation Criminal Division, Washington, D.C., Christopher Barnes, U.S. Atty., Cincinnati, Ohio, for respondent.

Before EDWARDS and MARTIN, Circuit Judges, and WALINSKI, District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

Imad Selim Nasser petitions for review of an order of the Board of Immigration Appeals finding him deportable under 8 U.S.C. § 1251(a)(2) and denying his application for asylum and the withholding of deportation under 8 U.S.C. §§ 1158 and 1253(h).

█ Nasser is a native and citizen of Iraq. He entered the United States as a nonimmigrant visitor on October 28, 1981; he was authorized to stay until November 28, 1981. On November 10, 1981, Nasser applied for asylum with the Immigration and Naturalization Service, but his request was denied by the District Director in an order dated March 10, 1982. On March 30, 1982, an Order to Show Cause was issued charging that Nasser was subject to deportation under section 241(a)(2) of the Act because he was no longer authorized to remain in the United States. A hearing was held on May 13, 1982 at which time, Nasser, represented by counsel, admitted his deportability. He did request, however, the withholding of deportation pursuant to section 243(h), and that his asylum application be renewed.[1] After the hearing, an immigration judge found that Nasser had failed to establish a well-founded fear of persecu-

---

[*] Honorable Nicholas J. Walinski, United States District Judge for the Northern District of Ohio, sitting by designation.

1. Under 8 C.F.R. § 208.3(b) (1983), requests for asylum made after the institution of deportation proceedings "shall also be considered as re-

quests for withholding exclusion or deportation pursuant to section 243(h) of the Act." *See INS v. Stevic,* —— U.S. ——, ——, 104 S.Ct. 2489, 2497 n. 18, 81 L.Ed.2d 321 (1984); *Shamon v. INS,* 735 F.2d 1015 (6th Cir.1984).

tion. This determination was upheld by the Board, and this petition followed.

■ In this court Nasser raises two claims of error. First, he alleges that he did not receive an impartial hearing at his administrative hearing. He also argues the Immigration and Naturalization Service failed to articulate a specific evidentiary standard by which his application for relief was judged. We disagree. Nasser's first claim is without merit. A review of the record positively indicates that Nasser received a full and fair hearing. He was given timely notification of the proceedings, was represented by counsel, and was permitted to introduce evidence in support of his claims. There is absolutely no evidence contained in the record which indicates that Nasser was denied any due process of law in the presentation of his claims. In fact, the record reveals that Nasser was granted a full and fair opportunity to state his case before the Immigration and Naturalization Service. His contention that the immigration judge ignored "uncontroverted testimony" contained in his asylum application is in reality an evidentiary challenge to the final determination reached by the Immigration and Naturalization Service. Putting this issue aside, however, we are firmly convinced that Nasser received a full and fair opportunity to contest his deportation, and we therefore find no merit in his first claim of error.

■ Regarding his second claim, Nasser asserts the immigration judge failed to articulate an evidentiary standard with regard to his claim under section 243(h) of the Act. He also indirectly challenges the evidentiary basis of the Immigration and Naturalization Service's determination. Both assertions are without merit. First, the opinion of the immigration judge reveals that Nasser's claims were reviewed under the correct legal standard. *INS v. Stevic,* — U.S. —, —, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984), held that "an alien must establish a clear probability of persecution to avoid deportation under section 243(h)" of the Act. As we ruled in *Dally v. INS,* 744 F.2d 1191 (6th

Cir.1984), the "clear probability" test requires that an alien must at least show "that it is more likely than not that *he as an individual* will be subject to persecution if forced to return to his native land." *Dally,* 744 F.2d 1191, at 1195 (emphasis in original). In other words, an alien must "advance some credible evidence that authenticates his subjective allegations of persecution." *Id.* at 1196. Here the immigration judge's opinion was written before the *Stevic* decision was decided. Nevertheless, the standard of review utilized by the judge was in accord with the standards set forth in *Stevic* and *Dally.* The immigration judge specifically concluded that there was insufficient evidence in the record "which would lead [him] to believe that [Nasser's] claims to asylum [were] well-founded or that his prospective fears [were] other than personal and ... of a generalized nature." The judge correctly noted that Nasser's self-serving declarations of persecution were not enough to entitle him to relief under the Act. *See Rejaie v. INS,* 691 F.2d 139, 145–46 (3d Cir. 1982); *Kashani v. INS,* 547 F.2d 376, 379 (7th Cir.1977). *Henry v. Immigration and Naturalization Service,* 552 F.2d 130, 131–32 (5th Cir.1977). Instead, as the immigration judge properly noted, Nasser was required to introduce credible evidence in support of his subjective fears or show other "special circumstances," *Chavez v. INS,* 723 F.2d 1431, 1434 (9th Cir.1984); *Martinez-Romero v. INS,* 692 F.2d 595, 595–96 (9th Cir.1982), which would entitle him to relief under the Act. These are the correct legal standards upon which an alien's claims for the withholding of deportation under section 243(h) are to be judged. Therefore, we find no error in the immigration judge's legal analysis.

■ We further find that the immigration judge's determination was not lacking in evidentiary support. As Nasser correctly admits, the burden of establishing a claim to asylum or the withholding of deportation rests upon the alien. *Reyes v. INS,* 693 F.2d 597, 599 (6th Cir.1982) (per curiam); *McMullen v. INS,* 658 F.2d 1312,

1317 (9th Cir.1981). At his hearing, Nasser submitted his original application for asylum, the decision of the District Director denying his asylum request, an unfavorable State Department opinion letter, and a two-page document from Amnesty International concerning human-rights violation in Iraq, entitled "Iraq Evidence of torture." In addition to these documents, Nasser also stated that if he were returned to Iraq he would be persecuted for his refusal to join the Baath Party, the dominate political party in Iraq. He noted that he had been arrested and jailed several times for his refusal to join the party. On one occasion, Nasser alleged he was beaten by Baath officials. Nasser further stated that his father had died sometime in 1979 as a result of a beating by Baath agents. He stated that if returned, he too would be executed. Outside of these subjective claims, no other evidence or affidavits were introduced which corroborated any of Nasser's individualized claims.

The immigration judge found these self-serving declarations lacking in credence. In particular, the judge noted that from March to November, 1981, Nasser had traveled extensively throughout the world. His travels included trips to Jordan, Yugoslavia, Greece and Mexico, before finally arriving in the United States. Moreover, the judge found that Nasser entered the United States with a valid passport. This, the judge found, contradicted Nasser's earlier claim that he "escaped from Iraq." The immigration judge also noted a lack of specific evidence to support Nasser's subjective claims of persecution.

A review of the record supports the immigration judge's factual and legal conclusions. Nasser failed to produce "sufficient credible evidence" authenticating his subjective allegations of persecution. *Dally,* 744 F.2d 1191, 1196. Undoubtedly, Nasser has made some serious allegations concerning his treatment in Iraq prior to his leaving that country. His claim that his father was beaten to death by state officials is very troubling to this court. Nonetheless, though we acknowledge the seriousness of Nasser's allegations, the immi-

gration laws as they presently exist preclude us from granting relief based on a petitioner's self-serving statements. As we noted in *Dally,* "[s]ome type of specific evidence that an individual would be actually singled out for persecution must be produced before we can rule that the Attorney General has abused his discretion, or has rendered a decision that was arbitrary or capricious." *Dally,* 744 F.2d 1191, 1196. Here, Nasser has failed to satisfy this standard. Further, the immigration judge's credibility findings regarding Nasser's oral testimony are supported by the record. Thus we find sufficient evidentiary support for the Board's upholding of the immigration judge's determination, and no abuse of the Board's discretion.

The petition for review is denied.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge, dissenting.

I cannot join in sending appellant Nasser back to Iraq on the present record, which totally fails to resolve Nasser's claims of past and prospective religious and political persecution of him and his family. Nasser claims that his father, a Christian, had been beaten by a Baath mob and died as a result of the beating. Nasser also claims that he had been beaten by Baath agents in 1980 because he refused to join their party. Although I recognize that his testimony may be "self-serving" (as is any effort to save one's life), I cannot on this record ignore or discount it as the INS has done. I would remand for taking of further evidence bearing on the acts of persecution to which Nasser has testified under oath.